HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JESUS RAMIREZ-LUCIO,

                Petitioner,

      v.

UNITED STATES OF AMERICA,

                Respondent.

CASE NO. CV 13-5118 RBL

          CR 11-5295 RBL

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

[DKT #10]

Petitioner has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. [Dkt #10]. His claims of error relate to the effectiveness of his counsel. The petition is **DENIED**.

## I.  Background

On October 11, 2012, after a five-day trial, a jury convicted Jesus Ramirez-Lucio of Count 1 of the Indictment, Conspiracy to Distribute Methamphetamine and Count 2 of the Indictment, Distribution of Methamphetamine. The jury also found that these crimes involved 50 or more grams of actual methamphetamine.

The evidence at trial showed that, on the morning of March 25, 2011, Detective Ryan Demmon was alerted by a confidential informant (CI) that a multi-pound methamphetamine

transaction was going to take place in southwest Washington. According to the CI, the dealer, an

individual from the Vancouver area named Jesus Ramirez-Lucio, was supposed to drive from

Clark County to Cowlitz County to deliver multiple pounds of methamphetamine to the buyer,

an individual from the Kelso area named Steven McCracken. This same deal was originally

scheduled for March 24, 2011, however, the deal was called off. Based on this tip, agents from

drug task forces in both Clark and Cowlitz County became involved in the investigation.

On March 25, 2011, Ramirez-Lucio met the CI at a Home Depot parking lot in

Vancouver. Ramirez-Lucio and the CI drove to Kelso to a residence on the 700 block of Bloyd

Street, which was the residence of Korbi Sorrell. Shortly after their arrival at Sorrell's house,

McCracken arrived with a backpack and a cardboard box. At Sorrell's house, Ramirez-Lucio,

McCracken, and the CI conducted a three-pound methamphetamine deal. Ramirez-Lucio was

paid approximately $37,000 for delivering three pounds of meth and left with the CI and the

money. McCracken took the methamphetamine.

After the Bloyd Street meeting, McCracken returned to his vehicle with multiple pounds

of methamphetamine. Just a few minutes after departing, McCracken was pulled over as he

drove southbound on I-5 by marked Kelso Police units. McCracken lead the police on a high-

speed chase, pulled over his car on the Route 432 bridge and jumped out while the car was still

running. McCracken threw bags of methamphetamine into the Cowlitz River. Some of the

methamphetamine was recovered and tested.

Jesus Ramirez-Lucio and the CI also departed from Bloyd Street shortly before

McCracken and were followed back to the Vancouver area where Ramirez-Lucio was stopped by

law enforcement. During the stop of Ramirez-Lucio, officers seized about $2000 from Ramirez-

Lucio's pockets. During the search of the pickup truck, officers found a shopping bag with

another $34,860. The officers also found a handwritten ledger with monetary amounts and weights, consistent with drug ledgers.

Ramirez-Lucio was interviewed after being advised of his Miranda rights in Spanish. Ramirez-Lucio confirmed that he had been in Kelso and that he met with McCracken. He said that he had known McCracken for less than one month. Ramirez-Lucio further admitted that he was involved in drug trafficking.

The government presented other evidence of Ramirez-Lucio's drug trafficking at trial, including previous meetings between Ramirez-Lucio, McCracken, and the CI. These individuals met at least one previous occasion at an old mansion in Cowlitz County for another methamphetamine transaction. This location was identified by the CI, who was present for the meeting. They met with "Diablo" another Vancouver-based methamphetamine dealer, who the CI testified was supplied by Ramirez-Lucio. Prior meetings were also shown through cell phone evidence; Ramirez-Lucio had a phone number for McCracken in his cell phone; both Ramirez-Lucio and McCracken had the phone number for "Diablo" in their phones.

At sentencing on January 18, 2013 the Court calculated the sentencing guidelines as 235-293 months. The Court sentenced Ramirez-Lucio to 168 months on Count 1 and 168 months on Count 2, with the sentences to be served concurrently.

Petitioner initially filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, on February 19, 2013 (2255 Dkt. #1). This unsigned motion claimed that Petitioner was entitled to relief from his sentence because trial counsel was ineffective. On May 9, 2013, the Petitioner moved to stay the action (2255 Dkt. #4). On September 5, 2013, the Court re-set the briefing schedule, granting Petitioner until October 7, 2013, to file a new petition. (2255 Dkt. #9). On October 3, 2013, the petitioner filed the instant petition. The Amended

Petition claims that trial counsel was ineffective because: 1) trial counsel failed to move for Rule 29 acquittal as to the conspiracy charge at the close of the government's case-in-chief and 2) trial counsel failed to present a "buyer-seller" defense to the conspiracy charge.

## II.  Discussion

Section 2255 provides grounds for relief in four circumstances: where (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" and where (4) the sentence is otherwise "subject to collateral attack."  28 U.S.C. § 2255(a).  The Court need not hold an evidentiary hearing on a § 2255 motion where the claims "can be conclusively decided on the basis of documentary testimony and evidence in the record."  *Frazer v. U.S.*, 18 F.3d 778, 781 (9th Cir. 1994).  There is no need for an evidentiary hearing given the nature of Petitioner's claims.

**A.  Ramirez-Lucio Received Effective Assistance of Counsel.**

Ramirez-Lucio claims that his attorney, Ronald R. Ness, provided ineffective assistance because he did not move for a Rule 29 acquittal. Petitioner also claims that Mr. Ness was ineffective because he failed to pursue a "buyer-seller" defense to the conspiracy charge. The government argues that Mr. Ness did move for a Rule 29 acquittal. The government also argues that it did prove conspiracy, that a "buyer-seller" defense is an incomplete defense to the distribution charge, and that, even if counsel was ineffective, there was no prejudice.

It is well-settled that a claim may not be raised in a § 2255 motion if the Defendant had a full opportunity to be heard during the trial phase and on direct appeal.  *See Massaro v. United States*, 123 S. Ct. 1690, 1693 (2003). It is also well-settled that where a Defendant fails to raise an issue before the trial court, or presents the claim but then abandons it, and fails to include it on

1  direct appeal, the issue is deemed "defaulted" and may not be raised under § 2255 except under

2  unusual circumstances.  *U.S. v. Frady*, 456 U.S. 680, 720-721 (1993).  When a Defendant

3  procedurally defaults a constitutional violation, he may not present it in federal habeas

4  proceedings unless he first demonstrates that (1) "cause and prejudice" excuses the default, or (2)

5  the dismissal of his appeal would produce "a miscarriage of justice" (actual innocence).  *Kibler*

6  *v. Walters*, 220 F.3d 1151, 1153 (9th Cir. 2000).

7          The procedural default rule does not bar ineffective assistance of counsel claims that

8  were not raised on direct appeal, even if they could have been.  *See, e.g., Massaro v. U.S.*, 538

9  U.S. 500, 504 (2003) ("an ineffective-assistance-of-counsel claim may be brought in a collateral

10  proceeding under § 2255, whether or not the petitioner could have raised the claim on direct

11  appeal").

12          In order to prevail on a claim of ineffective assistance of counsel, the defendant must

13  show that:  (1) his counsel made errors so serious that they were not functioning as the "counsel"

14  guaranteed by the Sixth Amendment; and (2) his counsels' constitutionally ineffective

15  performance affected the outcome of the case.  *Strickland v. Washington*, 466 U.S. 668, 687

16  (1984).  According to the Supreme Court, "judicial scrutiny of counsel's performance must be

17  highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls

18  within the wide range of reasonable professional assistance."  *Id*. at 689.  To show that his

19  counsels' unprofessional errors actually prejudiced his defense, Ramirez-Lucio has the burden of

20  establishing that his "counsel's errors were so serious as to deprive the defendant of a fair trial, a

21  trial whose result is reliable."  *Id*.  In other words, Ramirez-Lucio must show that "there is a

22  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

23  would have been different."  *Id*. at 694.

24

As to Ramirez-Lucio's claim that counsel was ineffective because he failed to move for a rule 29 acquittal, counsel did so move. Trial counsel did move for acquittal at the close of the government's case on day 4 of the jury trial. *See* 10/9/12 Minute Entry (Dkt. # 129). This claim fails as a matter of fact.

Ramirez-Lucio also claims ineffective assistance of counsel based on counsel's failure to raise a "buyer-seller" defense to the conspiracy charge. Mr. Ness's trial strategy not to pursue a buyer-seller defense was not deficient. The government presented overwhelming evidence of Ramirez-Lucio's involvement in a conspiracy. The transaction involved a large quantity of methamphetamine (over three pounds) and $37,000 in cash. This is inconsistent with a one-time transaction for personal use; the buyer-seller defense would have been an incomplete defense to the conspiracy charge. Mr. Ness focused the defense strategy on witness credibility, a reasonable strategy given that the confidential informant was also involved in drug transactions. This court will not declare the strategy unreasonable simply because it was unsuccessful.

### III.   Conclusion

Ramirez-Lucio's § 2255 Petition based on ineffective assistance of counsel is **DENIED**. The Clerk shall send uncertified copies of this order to all counsel of record, and to any party appearing pro se.

**IT IS SO ORDERED.**

Dated this 24th day of April, 2014.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE